Smith, J.
We are of the opinion that in this case, and the two other cases against the same defendant, which were submitted with it, the writ asked for should [be refused, and the petitions dismissed. And upon the ground that the special school districts, which it is claimed were established by the Board of Education of Union township, Butler county, Ohio, on August 27, 1894, were in fact never legally established by it, and that the attempted action in the manner in which it was done, was against public policy, and therefore void.
The facts briefly stated were these: Pour separate and distinct petitions had been presented to the Board of Education at the same meeting. Each prayed for the establishment of a special schooUdistrict, and the territory sought to be included in each of said special school districts prayed for, was attempted to be described in the several petitions; that is, it was sought by one of the petitions, to have sub-school district No. 2, changed to a special school district No. 2. By another, to have sub-district No. 4, changed to special district No. 4. By another to have sub-district No. 6, changed to a special district No. 6, and by the fourth to have sub-district No. 9, changed to a special district No. 9.
There were at this time seven sub-school districts in Union township, viz. Nos. 2, 3, 4, 6, 7, 8 and 9, and at the meeting of the board in question, each sub-district was represented by one member. After the presentation of the petitions Mr. Schoenberger, the member from No. 9, moved that the prayer of the petitions be granted, and that special school districts Nos. 2, 4, 6 and 9 be established in the- *305 stead, of the sub-districts of the same numbers, and this motion was seconded, whereupon Mr. Hughes, a member of the board from district No. 8, moved to amend the pending motion so that the vote be taken separately on each petition. This amendment was seconded, and the vote taken on the motion to amend, the sub-districts being called by their numbers, and those representing sub-districts Nos. 3, 7 and 8 voted for the amendment, and those representing sub-districts Nos. 2, 4, 6 and 9, voted against it, and the amendment was therefore lost. Thereupon a vote was taken on the original motion, and the districts being again called by numbers, those members representing sub-districts Nos. 2, 4, 6 and 9 voted in favor of it, and those representing sub-districts Nos. 3, 7 and 8 voted against it. The names of those so voting nowhere appear on the record, the clerk having entered the votes by sub-districts.
•It would seem that the provisions of sec. 3982, Rev. Stat., which make it obligatory that in certain cases therein mentioned ‘'the clerk shall publicly call the roll of all the members cpmposing the board and enter on the record required to be kept, the names of those voting ‘aye,’ and the names of those voting ‘no,’ and if a majority of all the members of the board vote ‘aye,’ the president shall declare the motion carried,” do not apply in terms to a vote upon the question of the establishment of a special district. It perhaps would fall under the following clause of the section, which provides that ‘‘upon any motion or resolution any member may demand the yeas and nays, and thereupon the clerk shall call the roll, and record the names of those voting ‘aye’ and those voting ‘no.’” In this case it does not appear that any member demanded the yeas and nays on either of those motions, and the president did not declare the original motion carried.
It further appears that John Burch, a member of the board from sub-district No. 2, voted for the motion establishing *306 the four special districts. At the next meeting of the board' Burch appeared, and requested that the vote of his sub-district on the original proposition be changed from yea to nay if it would not affect the action of the board as to the other districts, and it may be that some action of this kind was attempted. But manifestly it could have no effect if it had been done. The vote as cast was correctly recorded, and the board had no right to change it,or make its record state an untruth.
At all events, Nos. 4, 6 and 9 acted as if the special districts had been legally established, and went on to organize under the statute, elected a board of education and other officers in each, and levied a tax for school purposes in these several districts,and demanded that the auditor of the county levy the same, which he refused to do. The board of education of the township claiming that the action was illegal, also applied to the auditor to place upon the duplicate a tax levied by them on all of the seven sub-districts as they stood before the action of August 27, which he did. Sub-district No. 2 never, in fact, was organized into a special district.
As we have before stated, we are of the opinion that the action by which the majority of the members of the Board of Education of Union township, attempted to change those four sub-districts into four special districts, was illegal, and therefore did not accomplish their purpose. It is manifest that there were four separate and distinct propositions submitted to the board for its action, and not one embracing four. A separate petition and proceeding in each case was absolutely necessary, for each petition must be signed by freeholders residing in the territory sought to be embraced in the proposed special district. There can be no claim, we think, that in a case like this, where it was proposed that four of the seven sub-districts, subject to the control of the Board of Education of the township (and each represented by one person), should be changed into special districts, *307 that justice and fairness would not require, that the vote on each of the separate and distinct propositions should ,be separately taken, at.least if such request be made by any member of the body called on to vote on the propositions. So far as we are aware the right to have this done, is secured to any member by the rules or practice of legislative or other bodies exercising functions like these.boards do. In this particular case, where it certainly in fairness should have been granted, it was refused by the votes of the four persons who represented • the districts desiring the change, the other three votes being in favor of .the division.
We are willing to concede that there is no statute law of the state, which expressly, for bids boards of education, in. cases of this kind, from including in one vote, several .distinct and independent propositions. But this, we think, does not concede that such action is therefore legal. On the contrary, we think, the case comes clearly within the principle of the decision of the Supreme Court in the case of Campbell v. Cincinnati, 49 Ohio St. 463. In that case it was expressly held that a separate suspension of the statutory rule (requiring ordinances to be read on three different days) as to each ordinance was requisite to its final passage, by the council of a city. And that a separate vote was requisite as to each ordinance on its final passage, in order that such passage might be legal.
The Supreme Court, in. the opinion announced by Judge Dickman, say: “The statute does not, in express words,Require the vote on dispensing with the rule, or on the final passage, to be taken separately on each ordinance, yet the obvious design of the law might be defeated if the vote were, not thus taken.” And further say that .in the passage,,of such ordinances, “.the property owner is entitled to the undivided judgment off the council upon an -ordinance -that would so materially affect his interests.” And it is further, said, “several ordinances should not be declared passe'dfat *308 the same time and upon the same and a single vote of council, but every ordinance should require for its passage a separate and distinct yea and nay vote. A contrary mode of legislation should be discouraged as opposed to public policy, and inimical to the public interests. The combination of several ordinances for passage on one and the-same vote, will too often gain the support of those who disapprove of one or more of them, but who expect in return to insure support for such of the measures as they favor. ”
Millikin, Shots & Millikin, and Morey, Andrews & Morey', for the relators.
A. F. Hume, and Israel Williams, for defendants.
This, we understand, places the invalidity of the ordinances in controversy in that case on the ground that the manner in which they were passed was not in conflict with any express provision of statute law; but on the ground that the manner in which it was done was against public policy. The same reasons exist in the cases before us, as in the Campbell case, and with even greater force.
It is urged that the auditor is a ministerial officer, and the persons claiming to be the boards of education of these alleged special districts, are at least officers de facto, and that the auditor is not to be permitted to question their right, but must act in the matter of these levies as directed by them. We think that this is not the case. It would seem that in the levy of taxes he is something more than a ministerial officer. But whether this be so or not, we are of the opinion that when by writ of mandamus he is called upon to perform a certain act, and refuses to do it, and it appears to the court, called on to compel him to act, that the relators have no right to have the act done, he will not be required to do it. This doctrine was laid down by this court in Ohio ex rel. v. Ratterman, 3 C. C. Rep. 626. The petitions will all be dismissed at the costs of the defendants, but as the cases were heard together, we suppose the relators in each of the three cases should pay- one-third thereof.